# Edward Green *vs.* William H. Conkling and others.

A deed, dated the 24th of July 1835, executed by the Washington Medical College of Baltimore, recited, that towards the erection of buildings on certain grounds of the grantor, $50,000 had been agreed to be contributed by various persons, who are to be identified by being owners of certificates therein described, and that said college has agreed to secure the payment of dividends on, and the reimbursement of the principal, of said contributions, "in the manner and in the event" therein stated. It then prescribes the form of the certificates, each being for $60, part of said $50,000, and to be entitled to "a dividend proportioned to its amount when the same shall arise, payable semi-annually" by the treasurer, for the time being, of the college, said sum to be accepted by the party to whom the certificate is issued, or his assigns, in discharge, to that extent, of said deed and of his claim to the property thereby conveyed, "when tendered at any time after the 24th of July 1845, by the grantors or their assigns." It then conveys the ground and buildings to certain trustees, in trust:—1st, that the grantor shall occupy and use the property, and receive the rents and profits thereof, until the sale thereinafter mentioned. 2nd, if the dividends stipulated to be paid by said certificates shall be in arrear and unpaid for one year from their respective dates, the trustees shall sell the property, and from the proceeds pay and reimburse the owners of the certificates the principal thereof, and all dividends that shall have accrued thereon, and the residue, if any, pay to the grantor, or its successors or assigns. On the 24th of May 1843, certain contributors under this deed filed their bill for the sale of the property thereby conveyed, on the grounds:—1st, that the college had received profits from which dividends should have been paid, but no such payments had been made. 2nd, that by reason of a judgment recovered against the college, and a sale of the property thereunder to a third party, the corporation had rendered itself incapable of carrying out the purposes of the trust. Held :

1st. As the answers deny the allegation that any dividends had accrued or become payable to the contributors under the deed, and there being no proof to sustain it, a sale cannot be decreed on this ground.

2nd. It appearing by the answers and proof that the corporation continued after the sale under the judgment, to occupy the buildings for the purposes contemplated by the deed, the mere fact of such sale did not render it so entirely incapable of performing the requirements of the trust as to authorise a decree for a sale under the deed.

3rd. Neither would the principles of equity applicable to such a case authorise a sale, simply because, by virtue of the sale of the premises under the judgment, the corporation was liable to pay rent or to be turned out of possession, provided at the time the bill was filed it was still in possession and using the property for the purposes contemplated by the deed.

4th. A failure to pay dividends is the only event which, according to the express language of the deed, authorises a sale, and the deed clearly invests, for the period of ten years, at least, the contributions of the certificate holders, and inhibits the payment of the principal until the expiration of that time, this bill was therefore filed too soon, even if it be held that from the general scope and design of the deed, it is to be considered as intending to secure the ultimate payment of the principal.

APPEAL from the Court of Chancery.

"The Washington Medical College of Baltimore," incorporated by the act of 1832, ch. 189, and afterwards by the act of 1838, ch. 138, styled "The Washington University of Baltimore," executed, on the 24th of July 1835, a deed conveying to the appellees, Conkling, Mayer, Frazier and Corner, certain leasehold property in the city of Baltimore, upon the terms and conditions therein expressed.

This deed, after reciting the lease to the corporation, (the grantor,) of the ground on Hampsted hill, in Baltimore, proceeds as follows: "*And whereas* toward the erecting a building, to be called 'The Washington Medical College of Baltimore,' on said ground, the sum of $50,000, in various amounts, has been engaged and agreed by sundry persons to be contributed, which persons shall be identified by being the owners of the certificates hereinafter mentioned. *And whereas* the Washington Medical College of Baltimore have agreed with said persons that they shall severally and respectively be secured, as hereinafter stated, the payment and receipt of dividends arising on the amounts of their respective contributions in semi-annual payments, on the 1st day of July and January, respectively, in every year, after the 31st day of

49      v.3

December, in the year 1836, the first semi-annual payment to become due and payable on the 1st day of January, in the year 1837. *And whereas* the reimbursement of the principal of the said contributed amounts has also by the party of the first part hereto been agreed with said persons, to be secured in the manner and in the event hereinafter stated. *And whereas* the certificates aforesaid, it is understood, shall be of the import, effect and tenor, and in substance as follows, to wit;

$60.00.      *Washington Medical College of Baltimore.*
                                                    *No.* ——

This certifies, ——————————— or his assigns, is entitled to the sum of $60, as part of the sum of $50,000 mentioned in and secured by means of a deed of trust, executed by the Washington Medical College of Baltimore on the 24th of July, in the year 1835. The said sum of $60 is entitled to a dividend proportioned to its amount when the same shall arise, payable semi-annually on the first day of January and July, by the treasurer for the time being of said college. The said sum of $60 shall be accepted by the said ———— or his assigns, in discharge and extinguishment to the extent of the said sum of $60 of said deed of trust, and the benefit thereof, and of the said piece of ground and premises thereby conveyed, when tendered at any time after the 24th day of July, in the year 1845, by the grantor aforesaid of said trust, or their assigns, or any of them, as proprietor or proprietors for the time being of said college. Which certificates shall be signed by the president of said college, countersigned by the parties hereto of the second part, and sealed with the seal of the corporation thereof, and shall be deemed to be *transferrable. Now this indenture witnesseth,*" &c. The deed then proceeds to convey the ground, and all the buildings and improvements thereon to the above named parties of the second part, "*in trust* that the parties hereto of the second part shall suffer and permit the party of the first part hereto, their successors and assigns, to have, hold, use, occupy, possess and enjoy the ground and premises aforesaid, with the appurte-

nances, and the rents, issues and profits thereof, until the sales and dispositions hereinafter mentioned; and *in trust*, in the second place, that if the dividends aforesaid stipulated in and by said certificates to be paid, or any part thereof, shall be in arrear and unpaid for the space of one whole year, from the dates thereof respectively," then it shall and may be lawful for the trustees, or the survivors of them, or the heirs of the survivor, upon certain prescribed notice, and upon such terms as they may deem proper, to sell at public sale the ground and premises, "and out of the money arising from said sale shall, after satisfying and paying all arrearages of rent due on said premises, pay and reimburse to said owners of said certificates the full amount of the principal moneys mentioned in said certificates, and all dividends that shall then have accrued thereon," and pay the residue, if any, to the parties of the first part, their successors or assigns.

On the 24th of May 1843, the appellees, certain contributors under said deed, filed the bill in this case, in behalf of themselves and all others interested under said deed, in which, after referring to the above mentioned acts of incorporation and deed of trust, they aver, that the object of the contributions advanced under said deed was the erection of a building to be used by said corporation as a medical college, and as a hospital and lunatic asylum; that they or those whom they represent had contributed for that purpose under said deed at least $30,000, by means of which and other sums contributed by other parties, a building as aforesaid was erected on said grounds, which was used by said corporate body from its completion for at least seven years, and until the sale hereinafter mentioned, as a medical college, and as a hospital and lunatic asylum, during which period said corporation derived from said building and such use thereof large issues and profits, from which dividends, within the purport and intent of said deed of trust, should have been paid to the complainants upon their contributions, but no such dividends have been paid to them; and they aver, that dividends to each and all of them accrued and are in arrear, and so have been for more

than one year, and that said default in payment of dividends entitled them, under the deed, to have the property sold to pay the principal sums contributed, as well as the dividends in arrear.    The bill then charges, that said corporation having had judgment recovered against it at suit of Samuel K. Jennings, for use of Edward Green, a *fi. fa.* on said judgment was levied on the property which was sold thereunder to Green, on the 27th of February 1843, by which means said corporation has become incapacitated for fulfilling the terms and requirements of said trust, and performing the agreements and conditions under which said advances and contributions were made.    That they have sought payment of their principal and dividends in vain from said corporation, which they charge to be utterly insolvent.    The bill then prays for a sale for the purpose of paying the principal and dividends of and on said contributions, and for general relief.

The defendants are The Washington University of Baltimore and Edward Green.    The answer of the corporation admits the deed, the advances under it, the erection of the buildings therewith, which were used from 1836, and still are used by it as a medical college, hospital and lunatic asylum, and that it has, from time to time, received moneys for such use.    It also admits, that no dividends have ever been declared or paid to the contributors, but denies that any dividends have ever arisen, accrued or become payable upon said advances, according to the true construction of the deed which contemplates the payment of such dividends only out of the net profits, to arise from the use and employment of said buildings when constructed and properly furnished, and denies that there ever have been such net profits at any period, and avers, on the contrary, that it has always been largely in debt for the construction and furnishing of the buildings, and carrying on the operations for which they were intended.    It then states that Dr. S. Jennings, either as chairman of the building committee or university proctor, from the commencement of its operations under the deed, had charge of the receipts and payments on its account; that in January

1841, his accounts were examined and passed by a committee of four persons, two of them being of the faculty of medicine, and the other two being the complainants and trustees, Corner and Frazier; that said committee found due $10,984.08, after crediting the corporation with all receipts for the use of the building, with sundry advances under the deed, and $6000 laid out for it in addition to his own advances, and which he agreed to turn to further advances under the deed, and that for the remaining debt it confessed judgment in Baltimore county court, on the 9th of February 1841, to Jennings, who afterwards entered part of the same for the use of Green, who, under an execution thereon, purchased all the corporation's interest in the property conveyed by the deed of trust. It also admits its insolvency, but avers that it has never failed to fulfil any of the requirements of said deed, and that it is now in the possession of the buildings, and using and employing them for the purposes contemplated by said deed, and the parties thereto, and that by the true construction of the said deed the principal thereby secured is payable only at the pleasure of the corporation, after the 24th of July 1845, and the contributors have no right or power to demand its reimbursement or sell the property therefor, except in the contingency of dividends being in arrear for one year, and that there never has been any dividend declared due or payable in the premises.

The answer of Green admits the deed of trust, but submits that it is not valid and binding as against the creditors, because the same was made to secure the stockholders of the corporation in preference to its creditors, and that the certificates issued under said deed were in fact certificates of stock and not loans to said company. He states that he does not know, and therefore does not admit the alleged advances of the complainants, but if they made any it was as stock in said corporation. He admits the erection and use of the buildings as a medical school and hospital, but denies that any profits arose from such occupation, or that any dividends within the purport of said deed ever became due and payable. He admits the judgment of Jennings, its assignment for his use,

and the sale thereunder, and the purchase by him, and avers said judgment to have been for a *bona fide* debt of the corporation; and this respondent also submits, that for the reasons assigned by his co-defendants in their answer, the said complainants have no right of redress.

The testimony of Dr. Jennings was then taken, sustaining substantially the answer of the corporation. The account on which the judgment was rendered, on which the property was sold, was also filed in evidence. This testimony was excepted to by the complainants.

The chancellor, (JOHNSON,) decreed the sale of the property. His opinion accompanying this decree is reported in 2 *Md. Ch. Decisions,* 497. The defendant Green appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*J. V. L. McMahon* and *Thos. G. Pratt* for the appellant contended:—1st. The whole question in this case turns upon the construction of the deed, and the rights of the parties under it. The complainants have not strictly a lien, but they are, *cestui que trusts*, interested in the execution of the power of sale, coupled with a trust. There are two trusts in this deed, one for the benefit of the corporation, the other for the benefit of the *cestui que trusts*, they being interested in the power of sale. The trust for the corporation is, that they are to have the benefit of the trust until the sale under the second trust. The estate of the corporation is not to cease when the default arises, but is to endure until a new estate comes into existence under the power of sale, which is analogous to a conditional limitation at law. There is no stipulation that the rents shall be paid to the contributors. It is what the law calls a passive trust; the trustees are to permit another party to pay over the profits to a third person. It is then such a trust as the statute will execute, and vest the legal title in the corporation. But if this is not so, then the sole beneficial interest is in the corporation, and such an interest

is vendible and may be seized under a *fi. fa.* and sold.    Act of 1810, ch. 168.

Again, the trust in favor of the appellees is a trust coupled with a power; their sole equitable interest springs from the power of sale, and in construing this trust three parts of the deed are material:—1st, the agreements recited; 2nd, the certificates issued; and 3rd, the recitals of the trust.    The agreement is to secure precisely according to the terms of the deed.    The certificate merely identifies the parties, and refers to the trusts of the deed.    The term *dividends* here used is uncertain, and they having failed to show, by proper averments, what is meant by it, we are thrown upon the answers and proofs, which show that it means *net profits* arising from carrying on the school and hospital.    There is no equity outside of the deed; the fact that they contributed the money gives them no equity against the building itself.    The deed says the loan was made expressly upon the security given by the deed, no equity, therefore, can arise from the loan, except that of a general creditor.    But there is, in fact, nothing like a loan in the whole matter; outside of the deed they could not maintain an action for the money thus advanced.    The principal was never to be paid except upon failure to pay dividends, and only in case of sale was it to be secured.    If it were a loan they could have recovered judgment at once and have sold the property.    Every loan implies an advance by one for the benefit of the party to whom it was advanced; such is not the case here.

There is no charge on the *rents and profits* of the property, but the engagement was to put buildings on the property, provided the profits of a business, to be carried on there, should be paid over to the contributors.    There is no stipulation *to make profits*, and in default thereof, that there may be a sale.    They were content to agree, that the profits, if *any were made*, should be paid over.    The sole engagement was, that if *profits were made and not paid over*, the property was to be sold.    The right to sell, on the ground that *dividends* were not paid, is abandoned, no such having ever

Green vs. Conkling, et al.

accrued. But after the sale to Green, under the judgment, the corporation were still as competent to carry on the business and make profits as ever. Green might turn them out, but *liability* to incapacity is not *actual incapacity*. The decree for the sale was therefore premature. The court has no power to break up the trusts of the deed, or to interpolate new ones into them. The chancellor has here asserted the right to break up a trust estate, and to create new trusts upon a contingency which, he admits, has never happened. This is a power which no court on earth can exercise. 1 *Pet.*, 14, 15. 8 *Wheat.*, 174. The only case in which a sale was authorised was in *default in not paying over profits which had accrued*. Where a power of sale is made to depend upon a previous event or contingency, it cannot be executed until the happening of that event or contingency. *Hill on Trustees*, 478, and cases there cited. 2 *Dallas*, 317. *Sugden on Vendors*, 16 *Law Lib.*, 268, 269. 2 *H. & G.*, 40, 41, *Lowry vs. Williamson.* 4 *Gill*, 395, 405, *Dolan and Foy vs. The Mayor of Balto.* 23 *Cond. Eng. Ch. Rep.*, 532, 536. If there be a mode pointed out by the instrument and it is not pursued, the sale is void. 7 *Gill*, 488, 492, 499. 2 *Bland*, 404, 435. 17 *Ves.*, 242. 5 *Munford*, 396. 3 *Murphy*, 190. 6 *H. & J.*, 490. 2 *Littel*, 115. 1 *Peters*, 138, 140. So in the case of a Welsh mortgage, equity never attempts to decree a foreclosure or sale of the mortgaged premises, because it would be violating the contract of the parties. *Coote on Mortgages*, 69 *Law Lib.*, 42, 195, 222. 70 *Law Lib.*, 571. There is nothing outside of the deed from which the assent to a sale can be implied, and nothing upon its face to show that the property should be sold in any other mode except in that provided for in the deed. The chancellor is also unfortunate in his analogies. See 2 *Story's Eq.*, sec. 1064, (a.) 2 *Jarman on Wills*, 533 to 537. 3 *Hill's N. Y. Rep.*, 368. 2 *Atk.*, 105. 13 *Pet.*, 464. *Coote on Mortgages*, 195. All these cases concede, that the court cannot go *beyond* the power given. They only construe the power to include the power of sale, and say that a devise of the rents and profits is a devise of

the estate. The speediness with which the money is wanted, gives the power to sell and not the charge on the rents and profits itself; but here the power to sell does not exist. Again, as to the acceleration of the remedy in *Elegit* cases. This is an extraordinary power, but it is not this case, for here there is no question as to the *remedy* but as to the *right*.

Finally, to sum up our positions in this point, we contend: That as there was, confessedly, no such default as alone authorised a sale under the deed, the appellees had no right to a decree for its sale, and that the case is even stronger than that of a Welsh mortgage, which gives no right to a decree for foreclosure or sale. That the case does not show the inability of the corporation to carry on the institution from which the profits were to arise. And even if this disability were conceded, as there was no default under the deed entitling to sale, and no debt for the *principal* incurred or due by reason of such disability, and no obligation on the part of the corporation to repay the principal at any time, such disability could not justify a decree for sale, either under the deed or by the remedial powers of a court of equity coming in aid of the objects of a deed. That the case is not analogous to those in which there is a direction, by will, to raise a sum of money out of the rents and profits of an estate, either within a fixed time or for a definite object, which must fail if unreasonably delayed, and where such express charge of rents and profits to raise a gross sum has been held to warrant a sale, in cases where the testator's intention would otherwise be defeated, upon the ground that the power to raise the money out of the rents and profits, was of itself a charge of the land, or was manifestly intended by the testator to be raised, at all events, out of the land, for the purpose specified in his will; that even in such cases the court decrees the sale, not upon the ground of giving relief *beyond the power in the will*, but because, in the particular case, they regard the power given as including that of sale, and will not give the relief by sale, where it is manifest from the words of the will that the testator intended only the appropriation of the rents and profits as

50    v.3

Green vs. Conkling, et al.

they *annually* arise; that the doctrine of these cases is entirely inapplicable to the present, where there is no charge either of the land or its rents and profits, for raising or paying the principal sums advanced, and where the whole agreement being to pay profits or dividends arising, not from the land, but from carrying on the institution, the mortgage is given to secure the payment of such dividends, and does not, in any event, authorise a sale, except in case of default in paying such dividends, upon which default alone the sale may be made, and the principal then reimbursed out of the proceeds. That the decree for sale cannot be sustained upon the principle of the cases which affirm the power of equity, where there is a clear and established lien on the rents and profits of an estate, to decree, under certain circumstances, a sale of the estate, and in which the court creates no lien, and gives no rights beyond the contract of the parties, but merely accelerates the remedy upon an established right. That it is not competent to a court of equity, under any of its remedial powers, to make a new contract for the parties, or to create a lien, or decree a sale, where the deed confessedly did not authorise it, merely because the security, as agreed upon and given, has proved ineffectual, or was made to depend upon a contingency which might never arise.

2nd. We also insist, that according to the true construction of the whole arrangement and agreement manifested and carried out by the certificates and deed, it was one under which the contributors advanced money for the erection and furnishing of buildings to carry on an enterprize, expected to be profitable, and by which they were to receive, and divide amongst themselves, *pro rata, all the net profits*, and it was therefore in law *a partnership* for that enterprize, and especially with reference to third parties having dealings with that partnership. By this arrangement the whole partnership property was to be held in the name of the corporation, and the whole business, from which profits were to arise, was to be carried on by, and in the name of, the corporation, which alone could make contracts or engagements pertaining to the

business of the partnership, and therefore, any debt contracted by the corporation, in its name, but for the purposes of the partnership, was a partnership debt. The answers and evidence show, that the debt to Jennings was contracted by the corporation for partnership uses, and as such, was audited and adjusted as correct, not merely by the corporation, but also by two of the trustees and contributors, and under the judgment rendered for this debt, the property was sold to the appellant. We therefore insist, that he thereby obtained a valid title to the property, and the decree against his title, and for a sale, was erroneous. In support of this point we urge and rely upon the following authorities and propositions of law: Communion in net profits will make a party a partner. *Collyer on Partnerships*, secs. 11, 18 *and* 1078. 2 *Richardson's Eq. Rep.*, 395. 39 *Law Lib.*, 2, 132. 17 *Eng. C. L. Rep.*, 405. 3 *Kent's Com.*, 26, 27, 28. By whatever name partners agree to carry on business, that is their partnership name, and by it they are bound. Here the name of the corporation was the partnership name. 1 *Denio*, 405, 481. 2 *H. & G.*, 171. If a judgment be obtained against a partnership and levied upon stock in the hands of a dormant partner, which is sold, he cannot afterwards recover back the property thus sold. 6 *Pick.*, 348.

3rd. Even if the corporation was not the representative of the partnership, it was, at all events, its agent, with authority to contract this Jennings' debt on its behalf; and the property of the partnership, included in the deed, was therefore liable for this claim, and where the property had been sold to pay the claim, and was transferred to, and in possession of, purchasers, equity will not disturb the sale. Even if the corporation did not represent the partnership, or was not its agent, still it was owner of the property employed in the business, bound to account only for *net profits*, and had a clear right, as against the contributors and the deed, to pay, out of the profits or property, debts contracted in carrying on the business, before making any dividend, and such creditors, therefore, were entitled, in equity, if not at law, to *prior* payment

as against the contributors.  And in a case where the deed secures only the right to *net* profits, and therefore only to profits which remain after discharge of such debts, if a sale is decreed in equity, on the ground of giving or accelerating the remedy, because of the failure of profits, such creditors having the *prior* right to be paid out of the profits, have a paramount right to the sale if decreed on this ground.  It will hardly be maintained, that the object of the deed was to secure to the contributors all the profits, and at the same time protect the property against all debts contracted in carrying it on and making profits, as the admission of such a purpose would render the deed fraudulent.  The object, therefore, if lawful, was to leave in the corporation the beneficial interest, subject to the payment of debts contracted in carrying on the operations from which dividends were to arise, and to leave to the corporation the payment of these out of the rents and profits, and to secure the property to the contributors, not as against these creditors, but as against the corporation.  And the claims of such a creditor being clearly paramount in equity to that of the contributors, a court of equity will not, at the instance of the contributors, disturb his title and possession thus acquired, in a case where it is not alleged or shown that the property was not sold for its value, or that it would probably produce more than sufficient to pay the debt; and, at all events, not except on the terms of paying the appellant's debt. The principle applicable here is, that equity will sanction when done that which, upon proper application, it would have ordered to be done.  2 *Gill*, 384.  10 *G. & J.*, 252.  5 *G. & J.*, 29.

4th. If it be maintained, that though the business was to be carried on by the corporation alone and in its name, and the *net* profits by it distributed among the contributors, still the corporation did not represent the partnership, and its debts contracted for, and in prosecution of, the business, were not the debts of the partnership, and the property mortgaged, although the capital or property of the partnership contributed for, and employed in, said business, was not liable

for such debts, then the deed was, in law, fraudulent and void as against the creditors to whom such debts were contracted, and especially as against the Jennings' debt.    Even if the arrangement had assumed the character of a *loan* of the advances by the contributors to the corporation, yet the reservation of *net profits* to the former, in lieu of interest, would of itself have rendered them in law partners as to that business.    But in fact this was not the character of the arrangement.    No loan was made to the corporation.    The corporation entered into no obligation to repay the sums advanced at any time, and its sole engagement was to account for and distribute the net profits of the business in which the advances were to be employed.    It was, therefore, a partnership, in which the property mortgaged was the capital to be employed in the business, and the contributors were alike stockholders. It was then an arrangement under which partners, or *quasi* stockholders take all the profits of the business, and at the same time secure to themselves, by deed, the return or repayment of all their capital or stock employed in the business, as against the creditors of the partnership, and are thus made preferred creditors of the partnership, on account of, and to the extent of, their capital or stock put into the business, or in other words, it is an arrangement by which the whole capital or stock of the business is withdrawn from the grasp of the creditors of the concern, to repay or return the capital employed in the business.    The deed carrying out such an arrangement is illegal, fraudulent and void, and gives no right to the decree for sale against the appellant.

*Charles F. Mayer* for the appellee.

The act of 1832, ch. 189, sec. 3, incorporates the professors, and among them Dr. Jennings, under whose judgment the whole property is now sought to be sold.    Green claims under him, and is subject to all the equities which exist against him.

Doctor Jennings was one of the partners himself, and was notified of the deed which gave the contributors a lien.    What

bound him as a corporator equally implicated him as an indi-
vidual.　5 *Cranch*, 86, 87, *Bank of U. S. vs. Duvall*.　A cor-
poration is nothing but an association of individuals.　4 *Pet.*,
*Billings vs. Savings Bank*.　1 *East*, 555.　2 *Richardson Eq.
Rep.*, 395.　The deed uses the term *contribute* and speaks of
the *reimbursement* of the money.　The rents and profits go
first to the corporation, and then there is a confidence that
they will go to the contributors.　The corporation were enti-
tled to the rents and profits, and were to account semi-annu-
ally for an amount answering to net profits; this would not
make them partners.　17 *Ves.*, 404.　There was no commu-
nity of profits between the corporation and the contributors,
and there must be such community to constitute partners.　3
*Kent's Com.*, 25.　Doctor Jennings took stock in the corpo-
ration and shows himself liable.　But he is a partner as to us,
and one partner may be preferred as to a particular claim over
another, where there is security given to one by the others.
*Pierce vs. Tiernan*, 10 *G. & J.*, 253.　4 *Johns. Ch. Rep.*, 525.

The corporation was, after the deed, no longer the owner of
the property.　Green does not offer to put himself in the place
of the corporation whose rights are entirely gone.　The sub-
stance of property is considered as residing in rents and pro-
fits, and they were secured to the complainants, and upon
this ground the chancellor puts the right to a sale.

But on another ground also it is put.　The corporation are
no longer in a position to execute the trusts and perform their
part of the contract.　Such a trust as this is not executed, it
is never executed where there is anything for the trustee to
do.　The corporation is deprived of its property and cannot
fulfil its obligation, and is incapable of performing its con-
tract.　If a party lends money to another, on condition that
he will give him the rents and profits of his farm, and the
latter disposes of that farm, this is a violation of the contract.
A court of chancery will decree *in invitum* where there is no
contract, for the purpose of substantial justice, and upon the
principle that rents and profits are considered the substance
of the property itself.　Where a party disables himself from

performing a condition, the condition is broken at common law. 2 *Thos. Coke*, (*top* 88,) (90,) 91, '2, '3.

Where the terms of a trust cannot be carried out, equity will interpose to carry out the intent and the spirit of the trust. This is the very reason that equity will interfere. 23 *Eng. Cond. Ch. Rep.*, 532, sustains this view. The contract was that the corporation should manage the property as owner, without rent. The chancellor has properly defined and construed the deed

1 *Gill and Johns*, 324, *Coale vs. Barney*, shows that courts will go very far to discover the essence and intent of a contract. They will not stick to the bark. The appellant has selected the corporation as his debtor, whose rights were subservient to the rights of the complainants. The sale by execution here frustrated the trust and entitled the complainant to liquidation by sale. 2 *Story's Eq.*, secs. 1216, 1217, 1064. 13 *Pet.*, 464.

*John Nelson* on the same side.

This bill was filed in 1843. In 1832, under the title of the Washington Medical College of Baltimore, the defendant was incorporated. It consisted only of the professors of the institution, of whom Dr. Jennings was one; they and their successors constituted the corporation. These *corporators* obtained from the complainants contributions, and they and the corporators entered into the deed in question. Now what was the extent and character of this agreement as evidenced by the deed? We must ascertain this from the whole deed. The parties are on the one side the corporation, who had the title to the property operated on by the deed, the others were the contributors, or those who might become such. The object was to supply the professors with the means necessary to build the buildings, as well as the subsiduary purpose of a boarding-house and asylum. What was the purpose of the deed? The contributors did not intend to make *a gift* of their money. The object then was to secure the contributors for their advances. This was to be done in the manner the deed

points out.   Now was this a loan?   The terms of the deed' are *secure* and *reimburse;* the *certificates* speak of a *security* by the deed, and endorsed on the margin, "*loan of* $60." Can there be a doubt that this was a loan?   It was surely not a *gift*.   They provide for the reimbursement of the principal sum.   It h̃as all the characteristics of a loan—an advance of money from one party to another.   The payment of interest for ten years was to come out of the *profits*.

The corporation incurred debts, and they confess a judg- ment under which the land' is sold and a stranger is put in possession, notwithstanding the deed.   The property is Green's, the possession is his, and if he suffers the corpora- tion to remain they are his tenants.   Does not all this prevent the corporation from making the profits contemplated by the deed? and are the complainants who have advanced their money without remedy?   There is no more ordinary head of equity jurisdiction than such a case as presented by the facts here.   The legal title to the land is by the deed transferred to the trustees, subject to certain trusts; now what are these trusts?   1st, the corporation are to hold the property until the sale, as hereinafter stated; 2nd, if the profits are not paid' *in trust* to sell.   This *condition imposes on the corporation the obligation* to occupy the buildings, so as to enable them to earn dividends under the terms of the deed.   There can be no doubt as to this, and if owing, to any act of *theirs* they have, by giving up the property to others, disabled themselves· from performing the contract, a court of equity will interfere and prevent such a fraud.

Suppose the corporation had aliened their property to some one else, for another purpose, in a week after the buildings had been completed, would not this be in equity a fraud upon the deed? and would not equity interfere?   This is too clear for argument.   If they had no power to alien, had they the power to *incumber*, which includes the former?   Here the college has aliened the property by its own act for the pay- ment of a *debt due to itself*.   Green was not a general creditor. The account on which judgment is rendered is that of Dr.

Jennings, as *provost* of the *corporation.* Now whose expenses were these? They were the expenses of the college. Dr. Jennings was not answerable in his own right for these debts, but only as agent of the corporation. He assumed to pay the debts, and takes an acknowledgment that he had overpaid the college.

Are the contributors responsible for the expenses of this institution? Was such the design of the parties or were they to conduct the college? If they could not be held personally responsible to the parties who advanced their goods to the institution, the property pledged to their security could not be.

Suppose they had refused to occupy the buildings for the purposes of the deed, a court of equity would at once interfere, and compel them to carry out the design of the trust or sell the property to reimburse the advances, and if this would be done as against the college, what difference does it make that Green is brought in as a party? The power of the court is placed upon the ground of *exigency,* of *necessity.* This is the power in cases of *Elegit.* The remedy will be accelerated. It is a case of necessity where there is no other remedy.

The answer to all this is that the parties *were partners.* Who were the partners? In what proportions? and how? What do they enjoy in common? The college has no interest in the profits for the first ten years. They go to the contributors and they divide them among themselves, not with the college. The contributors have no interest in the debts of the corporation, they are not responsible for them. Again, are the contributors partners *inter se.?* There is no joint responsibility or joint claim as between the holders of these certificates. The claim of every one is distinct from that of every other. The certificates are *transferable*—the partnership then could be changed at pleasure. This cannot be. There is no common interest between them; the corporation could extinguish which of these certificates *they pleased.*

But if there was a partnership, how can this affect this decree? it interposes no difficulty as to the power of a court

51     v.3

of chancery to decree a sale. After the partnership is settled up, the rights of parties then may be determined. Green might sell out one of the partners, but that does not give him a right to the whole partnership fund. He would only be subrogated to the rights of the college under the deed of trust. All he purchased under the sheriff's sale was the interest of the college as one of the partners. There is no *agency* in the case.

*Reverdy Johnson* for the appellant, in reply.

1st. What are the rights of the complainants against the corporation, suppose a sale had not been made to Green? 2nd. What effect had that sale? 3rd. What are the rights of the complainants as general creditors?

On the first question there can be but little difference of opinion. The deed stipulates:—1st, that the college is to remain in possession until default in paying the dividends; 2nd, it gives to the contributors certain portions of the net proceeds or profits as dividends; and 3rd, authorises the sale of the property when default is made in payment of those dividends. There is no sale authorised in default of paying the principal advanced. The principal was never to be regarded as a debt, except at the option of the college. So far as the college is concerned it was a *permanent loan*, to be redeemed or not at their pleasure.

The bill seeks relief on two grounds:—1st, that dividends had accrued, but had not been paid; but this the proof does not sustain, and this ground the chancellor abandoned. The second ground embraces the *second* head of inquiry, and *is*, whether, by reason of the sale to Green, equity could interfere and decree the sale?

Originally when a trust was created to raise an annuity out of rents and profits, either by will or deed, equity would not interfere to sell the land. But in more modern times equity does interfere to accomplish the *end* of the charge by accelerating the remedy. But this doctrine has its limits:—1st, if the charge is to pay an annual *interest* as an annuity out

of rents and profits, and they are *insufficient* for that purpose, equity will interfere. So where there is a *specific sum* in gross to be raised in a specified time, and the rents and profits are insufficient. So also where there is a specific sum, which, from the nature of the contract, is to be raised in a *reasonable* time. So at law, where the debt is due which is a lien on land, and it cannot be paid under an *Elegit* within a reasonable time. But beyond these cases no chancellor in this country or in England has ever gone. If this be so, no modification of the rule embraces this case. Here the deed stipulates that one party agrees to lend on certain stipulations, and the other agrees to repay the principal in a certain mode specified by the deed, and in no other. As to interest on the loan, they only promise to pay profits, whether they be more or less than six per cent. It is admitted, that looking to the contract there was no default in paying dividends, because no dividends were ever earned. There is no promise to apply the profits to the payment of the principal. This loan they had the right to extinguish by another loan procured from some other source.

At the time the bill was filed in 1843, there was no right to a sale, because the *time* had not elapsed at which the sale was to be made. The chancellor has therefore made the borrower pay before he, by his contract, was compelled to pay. 2 *Story's Eq.*, 1064 *sec.*, states and explains the general rule as to the cases in which equity will interfere to decree a sale. *Ib.*, sec. 1216, *(a.)*

Now what is the effect of the judgment and subsequent sale? The *judgment* left the college, so far as *solvency* is concerned, precisely where they stood before. Now could the sale under the judgment give the court the right to interfere, when, by the terms of the deed, the complainant had no such right?

The bill alleges, that the complainants are the *original* contributors, to the amount of $30,000 of the $50,000 wanted, and it was for the purpose of erecting the required buildings, for which it was not sufficient. Other expenditures were necessary;

medicines and furniture for the buildings were to be procured, or the concern must stop. Somebody must contribute these sums. The complainants did not do it. Now what are the rights of these complainants under their deed of trust, as against the creditors of the concern who advanced their money and means to furnish the building and set the concern at work? They have no rights; it would be but right, apart from the deed, that these parties should be placed on the same footing. But the complainants have surrendered this right by the terms of their deed. The account on which this judgment was rendered, was admitted to be correct by a committee appointed for the purpose, and was signed by them.

Again, the prayer of the bill is, that a sale may be made and distribution of proceeds applied to the payment of complainants and others claiming in *like right,* and the *decree* says that the property shall be sold and that the complainants are entitled to relief *as prayed,* and so *decrees.* This decides that the contributors under the deed have superior rights to those of all other creditors of the corporation. This postpones the claim of Dr. Jennings, who advanced his money for the very purposes of the corporation. Now on what ground is this done? The first ground is because Dr. Jennings is a corporator, but a corporator may be at the same time a creditor of the corporation. 2 *G. & J.,* 227.

A corporation may employ one of its own members as an agent. The corporation was either the agent or the partner of the contributors. Suppose either case, what right have they to postpone the general creditors of the college. This doctrine would lead to the result that the contributors, the parties concerned, were not to lose in any event. If profitable they were to get profits, if unprofitable they were to get off free from loss by their lien on the property. This would be in fact a *fraud,* yet the effect of the chancellor's decree is to thus protect them. 1 *Denio,* 405, shows that the contributors would be bound for the acts of the corporation as their agent.

The chancellor says there can be no partnership, because

there was to be no *communion of profits*. The question of partnership here is as between this concern and *the public*. What difference does it make to others whether one partner gets the whole profits or not? This is nothing with which the public have anything to do. They are responsible, because they are held out to the world as *partners*, no matter whether they received profits or not. The mistake is in regarding this as a partnership *inter sese*, and not as a partnership *inter alios*.

Again, the college is now going on in the use of the property just as it did before. Green has not turned them out of possession. The mere obligation to pay rent if charged, or to be turned out of possession if he so should assume to do, does not make out such a case of failure of capacity as to warrant the interference of equity. The deed does not compel them to carry on the college in that particular locality. They could have gone elsewhere and leased this particular property. There is no particular provision of the deed binding them to carry on the business *there*.

Again all persons who contributed to the buildings were to be interested *pro rata*, according to their advances in the profits of the college, not exclusively those who contributed on the face of the deed. The deed does not so stipulate. *All* the profits were to go to the contributors. The *deed* says they are only to be entitled *pro rata;* of course there is then to be a division of the profits among others. This therefore makes out a partnership. The true construction of the deed is, that they were only to receive their proportions of dividends which their contributions bore to the whole *amount of capital*. The object was to make the business profitable to all concerned, but the chancellor makes it profitable only to a selected few. The college was to receive its proportion of the profits. 9 *Barn. and Creswell*, 401. 17 *E. C. L.*, 404.

If any other construction than the one we have placed on this deed can be given to it, it is clearly fraudulent, whether the parties designed so or not.

A power of sale càn only be exercised in the mode and according to the terms of the deed. If a condition is precedent, it must happen in order to *give existence* to the power to sell. *Hill on Trustees,* 478. *McElderry vs Shipley,* 2 *Md. Rep.,* 25. 1 *Pet.,* 1, *Hunt vs. Rousmainere.*

ECCLESTON, J., delivered the opinion of this court.

The complainants in their bill rest their claim to a sale of the property, included in the deed of trust, upon two grounds:— 1st. That the corporation received large profits from which dividends, within the meaning of the deed, should have been paid to the certificate holders, but no such payments had been made. 2nd. That the sale of the property to Green, under the judgment, had rendered the corporation incapable of carrying out the purposes of the trust, and of performing the conditions which induced the contributions to be made.

In argument, the first ground was not formally abandoned, but virtually so. As well it might, because the answers deny that any dividends had ever accrued, or become payable to the contributors under the deed. And there is no proof to sustain the allegation of the bill in this respect.

Neither can the second ground taken be sustained in our opinion. The answer of the corporation states, that "from 1836, or thereabout," the buildings had been used, and, at the time of making the answer, were still being used by the corporation as a college for medical instruction, and as a hospital and lunatic asylum, and that moneys had been received by them, from time to time, for such uses of the said buildings. In a subsequent part of the answer they admit their inability to pay their debts, but distinctly assert they had never failed to fulfil any of the requirements contained in the deed of trust, and that they were then in possession of the buildings erected for the purposes of the institution under the deed, and were using and employing them for the purposes contemplated by the deed and the parties thereto.

Green states in his answer, that the corporation occupied the buildings, as a medical school and hospital, from the time

of their completion up to the sale made to him. But he denies that from such occupation any dividends, within the purport of the deed, ever became due and payable. He says nothing in regard to the possession or occupation of the buildings after he purchased them. The rendition of the judgment, and the sale to him under it, he admits, and then adds: "This respondent also submits, that for the reasons assigned by his co-defendants, in their answer, the said complainants have no right of redress."

After such a reference to, and reliance upon, the grounds taken in the answer of the corporation to defeat the claim of the complainants, it cannot be supposed that the silence of Green, in reference to the possession or occupation and use of the buildings by the corporation, after the sale, as stated in their answer, was intended to contradict the statement on that subject made by them. And there is no proof in the cause tending to show, either that the corporation were not occupying the premises, as usual, after the sale and up to the time of making their answer, or that they were paying rent to Green for the same, other than the mere fact of the sale itself. But if the proof was before us that the corporation were paying rent for the premises, it would only lessen their means of accumulating dividends for the contributors. We do not see, that whilst they continued to occupy the buildings for the very purposes contemplated by the deed, the sale of the buildings rendered the corporation so entirely incapable of performing the requirements of the trust, as to authorise a decree for a sale under this deed, which, to say the least of it, is not very explicit. There is no provision in it for a sale in case of failure to realize profits, out of which dividends were to be paid, but the sale is to be made on failure to pay dividends which have actually accrued and remain unpaid for a year. A sale, under the circumstances disclosed in the record, could not be claimed by virtue of any express provision in the deed. Nor would the principles of equity, applicable to such a case, authorise a sale, simply because, by virtue of the sale of the premises under the judgment, the corporation were

liable to be turned out of possession or to be compelled to pay rent; provided that at the time the bill was filed they were still in possession of the property, and using it for the purposes contemplated by the deed. A state of things calculated, only, to reduce the means of producing dividends, but not, necessarily, to render the corporation entirely incapable of performing the duties required by the trust, could not entitle the appellees to a decree in their favor under the present proceedings.

In this instrument there is no express authority, at least, in language plain and clear of doubt, to sell the trust property for the payment of the principal of the contributions. There is a provision, that if the dividends stipulated in and by the certificates to be paid, or any part of them, shall be in arrear and unpaid for a year, then the trustees may sell the property, and out of the proceeds of sale, after the payment of arrearages of rent, pay and reimburse the owners of the certificates the full amount of the principal of said certificates, and all dividends in arrear, and the residue, if any, to the corporation. A failure to pay dividends is the only event which, according to the express language of the deed, authorises a sale.

Among the recitals in the deed is one, that at any time after the 24th of July 1845, (ten years after the date of the instrument,) the corporation are to have the privilege of paying the principal to the certificate holders, in discharge of all claim under the trust. But it is nowhere said at what time the certificate holders may *demand* payment of the principal, except out of the proceeds of the property, when sold, in consequence of a failure to pay dividends. If, then, it should be held, that from the general scope and design of the deed, it is to be considered as intending to secure the ultimate payment of the principal, it was not contemplated that the same should be paid within ten years.

The deed clearly invests, for the period of ten years, at least, the contributions of the certificate holders, and inhibits the payment of the principal until the expiration of that time. The institution appears to be still in operation. This being

so, and there being no proof of profits out of which dividends could alone be made, establishes, in any aspect of the case, that the bill was filed too soon.

We do not wish to be understood as intimating, that had the ten years elapsed, or the purposes of the institution completely failed, the complainants would have been able to maintain this proceeding.   On that subject it is not necessary we should, at this time, pronounce any opinion.   The decree will be reversed and the bill dismissed, with costs to the appellant.

*Decree reversed and bill dismissed.*